# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-_____-___

BLAZY SUSAN, LLC, a Colorado limited liability company,

Plaintiff,

v.

Millitron, LLC, a Michigan limited liability company;

ASHH, Inc. a Michigan corporation,

Defendants.

---

## COMPLAINT

---

Plaintiff Blazy Susan, LLC a Colorado limited liability company ("BSL"), by and through its attorneys, Leyendecker & Lemire, LLC, for its Complaint against Defendants Millitron LLC a Michigan limited liability company ("Millitron") and ASHH, Inc. ("ASHH") (collectively the "Defendants"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## INTRODUCTION

BSL is a Colorado family-owned business engaged in the design, creation, and sale of innovative cannabis smoking accessories and storage solutions (the "BSL Products"). BSL has been in business since 2015, and has successfully been selling its unique namesake

smoking storage solution since 2015 through on-line retailers such as Amazon.com, brick and mortar retailers, and its website www.blazysusan.com. In 2017 BSL added a distinctive line of pink cigarette rolling papers and pre-rolled cones to its product offerings. In contrast to prior offerings in the market which featured plain, non-descript packaging, BSL's packaging was engaging and distinctive featuring uniquely shaped packaging, the prominent use of the color pink and a female character named "Susan". In a blatant attempt to capitalize off BSL's successes, ASHH, a former BSL distributor, and its affiliate Millitron began manufacturing and selling their own brand of substantially similar pink cigarette rolling papers and pre-rolled cones, utilizing a confusingly similar logo under the brand name ROZY utilizing virtually identical product packaging as BSL.

BSL brings this case to stop Defendants' manufacture and sale of knockoff cigarette rolling papers and pre-rolled cones. BSL sues for infringement of BSL's federally-registered trademarks/service mark, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Copyright infringement under 17 U.S.C. § 501 and for substantial and related claims of trademark infringement and unfair competition under the statutory and common laws of the State of Colorado, all arising from the Defendants' use of an infringing name, logo and associated product packaging in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendants' cigarette rolling papers and pre-rolled cones.

**PARTIES**

1.      Plaintiff BSL is a limited liability company that is organized in Colorado and has its principal place of business located at 10660 E. 51st Ave., Denver, Colorado 80239.

2.      Upon information and belief Millitron is a limited liability company that is organized in Michigan and has its principal place of business located at 13231 Northend Ave., Oak Park, Michigan, 48237.

3.      Upon information and belief ASHH is a corporation that is incorporated in the State of Michigan and has its principal place of business located at 13231 Northend Ave., Oak Park, Michigan, 48237.

4.      Upon information and belief Millitron is an affiliate of ASHH, either as a subsidiary of ASHH or under common ownership and control with ASHH.

**JURISDICTION**

5.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

**VENUE**

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district and that Defendants' actions specifically and intentionally targeted Plaintiff, a company that ASHH had entered into a prior business relationship with and who resides in this district.

**FACTS**

A.  Plaintiff and Its BLAZY SUSAN Family of Marks

7.      BSL was founded by William Breakell, a lifelong entrepreneur. Mr. Breakell's experience as an entrepreneur started at the ripe old age of 10 selling lemonade and hot chocolate on the street corner outside his Virginia home. At 13 he started a landscape company that he ran until he sold it at the age of 20 when he went to college.

8.      During Mr. Breakell's time in college, his mother was diagnosed with stage 3 breast cancer. Watching his mother go through chemotherapy piqued his interest in cannabis and the use of cannabis as a medicinal treatment for cancer patients and other ailments. As a result Mr. Breakell became a very passionate advocate for the medicinal uses of cannabis.

9.      BSL was conceived out of a tray concept to help clean up and organize the stereotypical "messy stoner" coffee table. The initial product launched in 2017 and was geared toward new cannabis users, especially new medicinal cannabis users that wanted a better way to organize their accessories.

10.      In 2017 BSL created their iconic "Susan" logo utilizing a retro 1950's/1960's diner feel branding utilizing a circular logo design featuring pink and at least one other contrasting color and featured Susan, a dark-haired waitress featured in a right facing ¾ profile pose with a lit cigarette in her left hand and a Blazy Susan organizer tray in her right hand. The upper portion of the circle features the literal element BLAZY SUSAN in a contrasting color. The lower portion of the circle features the literal element EST. DENVER, CO in a contrasting color.  (the "Susan Logo"). The following is a copy of the Susan Logo



11.    The Susan logo' retro feel was inspired by the concept of what if cannabis had
always been mainstream and what would it look like in the 1950's and 1960's.

12.    In 2018, BSL introduced its line of pink cigarette rolling papers.  At the time of
their launch, the BSL rolling papers were the only pink rolling papers actively being sold in the
United States.

13.    Prior to the introduction of the BSL cigarette rolling papers, the product
packaging for most rolling papers in the industry had a generic look and feel which did not
emphasize branding or brand awareness. See Exhibit 1.

14.    The pink BSL papers and their packaging were more vibrant, utilized distinctive
logos and graphics making them distinguishable from the competition.

15.    The use of pink tied into the color scheme used in the Susan Logo and also
complimented BSL's commitment to donating a portion of its profits to breast cancer research
and awareness.

16.    In 2022 BSL donated over $50,000 to charity including donations the research
focused Lynn Sage Foundation and to the Keep a Breast Foundation.

17.     BSL is the owner of valid and subsisting United States Copyright Registration No. VA-2-120-763 for the Susan Logo, for which the effective date of registration is April 30, 2018 (the "BSL Copyright").

18.     The Susan Logo is wholly original, and BSL is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Susan Logo.

19.     BSL has never authorized Defendants to manufacture, copy, sell or distribute their own products bearing the Susan Logo or a colorable imitation thereof.

20.     In addition, BSL is the owner of numerous valid and subsisting United States Trademark Registrations on the Principal Register including the following (collectively the "BSL Registered Marks"):

(a)     Registration 6,581,660 for the mark BLAZY SUSAN EST. DENVER, CO and Design



for use with Cigarette rolling papers, Cigarette filters Cigarette papers, Cigarette tubes, and Smokers' rolling trays (the "Susan Logo Registration").

(b)     Registration 6,580,646 for the mark BLAZY SUSAN 1 1/4 SIZE PINK ROLLING PAPERS and Design



for use with Cigarette rolling papers (the "Rolling Paper Logo").

(c)    Registration 6,562,728 for the mark BLAZY SUSAN



for use with Cigarette filters, Cigarette papers, Cigarette tubes, Cigarette

rolling papers, and Smokers' rolling trays (the "Script Logo").

(d)    Registration 6,271,714 for the mark BLAZY SUSAN for use with

Cigarette filters, Cigarette papers, Cigarette tubes, Smokers' rolling trays,

Cigarette rolling papers (the "BLAZY SUSAN Rolling Papers Mark").

(e)    Registration 5,556,890 for the mark BLAZY SUSAN for use with Baking

mats, Containers for household or kitchen use, Containers for household

use, Glass carafes, Glass jars, Lazy Susans, Lockable non-metal household

containers for food, All purpose portable household containers, Glass

pipes, not for building and not for scientific purposes, Hand-operated

grinders, and Plastic storage containers for household or domestic use (the

"BLAZY SUSAN Storage Mark"

(f)     Registration 7,047,749 for the mark BLAZY for use with Hats, Shirts,
Sweatshirts, Hooded sweatshirts, and Sweat suits (the "BLAZY Apparel
Mark").

Copies of the registration certificates for the BSL Registered Marks are attached
as Exhibit 2.

21.     In addition to the BSL Registered Marks, BSL has extensive common law trade
dress rights in its distinctive product packaging including the following (the "BSL Trade
Dress"):

(a)     The "6 Cone Box Trade Dress" consists of a trapazoidal prisim shaped
box primarily shaded in pink at the top and a contrasting color at the
bottom.   The literal elemnt "1/4 Size" appears on the upper half of the box
over a 2nd constrasting color.  The Susan Logo appears in the upper half of
the box . Below the Susan Logo appears the literal elements "SLOW
BURNING" "ULTRA THIN", "VEGAN", and "GMO FREE" arranged
vertically. In the lower contrasting color portion of the box appears the
literal elements "PINK CONES" and "6 CONES PER PACK" arranged
vertically.  A picture of the claimed trade dress is featured below:



(b)    The "Canister Trade Dress" consists of a clear cylindrical canister with a

black lid.  The center of the canister features a label, the upper part of

which is pink and the lower part is black.  The literal element "BLAZY

SUSAN" appears in the upper pink portion of the label.  Above the

"BLAZY SUSAN" literal element appears the literal element "50 98 MM

CONES" surrounded by a rectangle composed of a contrasting color. The

literal element PINK CONES appears in pink in the lower black portion of

the label with a checkerboard pattern on either side of the PINK CONES

literal element. Below the PINK CONES literal element appears in pink

the literal element SLOW BURNING · ULTRA THIN · VEGAN · GMO

FREE.  An image of the Canister Trade Dress appears below:



(c)     The "Cone Box Trade Dress" consists of a rectangular pink box oriented

along the short edge. A black stripe appears on the lower portion of the

box.  The center portion of the box features the Susan Logo. The literal

element PINK CONES appears in the black shaded area with a checker

board pattern on either side of the literal element.  The literal element

SLOW BURNING · SUPER THIN · NATURAL DYE · GMO FREE

appears below the PINK CONES literal element.  An Image of the Cone

Box Trade Dress appears below:



(d)     The "Rectangular Counter Display Trade Dress" consists of a pink

rectangular countertop display box with the lid open and extending

vertically above the back of the box. The Susan Logo is featured on the

lid. Below the Susan Logo appears a black stripe featuring a checkerboard

pattern extending from the sides towards the center of the box. The literal

element "PINK ROLLING PAPERS" appears centered in the black stripe.

The front of the box features the literal element "BLAZY SUSAN". Under

the BLAZY SUSAN literal element appears the literal element

"PREMIUM MADE IN FRANCE". A contrasting color accent stripe is

featured on the lower portion of the front of the box with a checkerboard

pattern extending from the sides towards the center of the box.  Centered

in the stripe is the literal element "PINK ROLLING PAPERS". Below the

"PINK ROLLING PAPERS" appears the literal element " SLOW

BURNING·ULTRA THIN·VEGAN·NON GMO". A image of the claimed trade dress is below:



22.     BSL has used the BSL Registered Marks and BSL Trade Dress in commerce throughout the United States continuously since at least as early as 2017/2018 for the BSL Registered Marks and 2018/2019 for the BSL Trade Dress in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of the BSL Products.

23.     At the time of their adoption and to this day, BSL's use of trapezoidal prism shaped boxes and clear acrylic cylinders with black lids in its product containers was unique in the rolling paper/pre-rolled cone industry and is therefore inherently distinctive.

24.     As a result of its widespread, continuous, and exclusive use of the BSL Registered Marks and the BSL Trade Dress to identify its BSL Products as their source, BSL owns valid and subsisting federal statutory and common law rights to the BSL Registered Marks and BSL Trade Dress.

25.     The BSL Registered Marks and BSL Trade Dress are inherently distinctive to both the consuming public and BSL's trade.

26.     If not inherently distinctive, the BSL Registered Marks and BSL Trade Dress have acquired distinctiveness amongst the consuming public as a result of its widespread, continuous, and exclusive use of the BSL Registered Marks and the BSL Trade Dress to identify its BSL Products as their source.

27.     BSL has expended substantial time, money, and resources marketing, advertising, and promoting the BSL Products sold under the BSL Registered Marks including through tradeshows in Colorado and throughout the United States, internet marketing and social media marketing. During the period from January 2020 to June 2023 alone, BSL has expended approximately $1.5 Million on the marketing, advertising, and promotion of the BSL Products sold under the BSL Registered Marks.

28.     BSL and its authorized distributors, sell the BSL Products under the BSL Registered Marks utilizing the BSL Trade Dress at wholesale and retail through on-line and brick and mortar establishments.

29.     Under the BSL Marks, BSL has had cumulative sales in excess of $35 Million, and sales in 2022, 2021 and 2020 of approximate $12.6 Million, $7.4 Million, and $1.7 Million respectively. BSL's 2023 sales are on pace to exceed $24 Million.

30.     BSL offers and sells the BSL Products under the BSL Registered Marks utilizing the BSL Trade Dress to retailers, distributors and direct to customers at its website www.blazysusan.com.

31.    The BSL Products are of high-quality utilizing materials including cigarette rolling papers and pre-rolled cones utilizing imported paper from France that is vegan, non-GMO and chlorine free. The use of these high-quality materials has gained BSL the reputation of being a high quality, premium smoking product.

32.    As a result of BSL's expenditures and efforts, the BSL Marks and BSL Trade Dress have come to signify the high quality of the goods designated by the BSL Registered Marks and BSL Trade Dress, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to BSL.

33.    The BSL Registered Marks and the BSL Products have received significant unsolicited coverage in various media, including CNN, Jimmy Kimmel Live, & CBS's Good Morning America. Additionally, BSL has received over 2,500 5-Star customer reviews.

B.   Defendant's Unlawful Activities

34.    Upon information and belief, ASHH is a manufacturer and wholesaler of smoking and cannabis related products including cigarette rolling papers, pre-rolled cones, grinders, vape products, and glass and water pipes and dabbing accessories. ASHH distributes and sells ROZY branded rolling papers and pre-rolled cones in interstate commerce.

35.    Upon information and belief, Millitron is the owner and manufacturer of the ROZY brand of rolling papers and pre-rolled cones.

36.    Upon information and belief, ASHH is a large corporation distributing over 45 brands of products with sales in excess of an estimated $100 Million per year.

37.     In mid-February 2019 representatives of ASHH approached BSL at a tradeshow in Colorado to inquire if BSL was interested in having ASHH be a distributor of BSL's Products.

38.     After the tradeshow the parties continued to discuss the distributor relationship where ASHH would sell BSL's rolling papers and pre-rolled cones to ASHH's retail network.

39.     On March 26, 2019, ASHH sent BSL a purchase order for their first order of BSL Products, which were shipped from BSL's location in Colorado to ASHH shortly thereafter. After the initial purchase, ASHH routinely purchased products bearing the BSL Registered Marks and packaged in the BSL Trade Dress and offered the BSL Products for sale to their customers.

40.     Over the 22-month period that ASHH was a distributor, Defendant purchased approximately $144,000 worth of BSL Products.

41.     In early 2021, Defendant presented William Breakell with the idea of ASHH acquiring BSL and inquired what BSL's desired purchase price would be.

42.     Mr. Breakell responded that any deal would need to be in the $10 Million range. After Mr. Breakell's response Defendant did not raise the issue of an acquisition again.

43.     Despite almost 2 years of successfully conducting business without a formal distribution agreement, on or about November 23, 2021 Defendant presented BSL with a proposed distributor agreement. Defendant represented that entering into the agreement was necessary for Defendant to continue to distributed BSL's Products.

44.     The proposed distribution agreement was draconian and biased in favor of Defendant.

45.     BSL informed ASHH that the terms of the agreement were not acceptable and that BSL would not enter into the distribution agreement.

46.     Thereafter, ASHH terminated its relationship with BSL.

47.     Upon information and belief, sometime after the ASHH's termination of the relationship with BSL, the Defendants due to the popularity of the BSL Products developed or caused to be developed a product line of rolling papers and pre-rolled cones intended to closely mimic BSL's Registered Marks and BSL Trade Dress.

48.     Despite the termination, ASHH still represented that it sold BSL products on its website.

49.     In approximately October 2022, Defendants released their line of ROZY rolling papers and pre-rolled cones (the "Infringing Mark"). The ROZY products were and remain available on ASHH's website www.cannatron.com .

50.     Defendants' products featuring a pink circular seal with black outlining, arched typography with a graphical element in the center.   (the "Infringing Logo"). A copy of the infringing logo is shown below:



51.     Defendant's product packaging also features cylindrical and trapezoidal prism

packaging utilizing a pink and black motif (the Infringing Packaging"):

  




52.    The Infringing Mark, Infringing Logo and Infringing Trade Dress adopted and used by Defendants is nearly identical to and/or confusingly similar to the BSL Registered Marks and BSL Trade Dress.

53.    The Infringing Mark is confusingly similar BSL's BLAZY, Script Logo, and BLAZY SUSAN Rolling Papers Marks.

54.    Both the Infringing Mark and the BLAZY Mark consist of single two syllable words that end in "ZY" and sound phonetically similar.

55.    The BLAZY Mark and the Infringing Mark are similar in sight sound and appearance.

56.    Being the first element of a composite mark, BLAZY is the dominant portion of the Script Logo and BLAZY SUSAN Rolling Papers Marks. Therefore, the Infringing Mark is also confusingly similar to the Script Logo and the BLAZY SUSAN Rolling Papers Mark.

57.     The goods on which the BLAZY Mark, the Script Logo, the BLAZY SUSAN
Rolling Papers Mark and the Infringing Mark are identical or closely related.

58.     The similarity between the BLAZY Mark, the Script Logo, the BLAZY SUSAN
Rolling Papers Mark and the Infringing Mark and the identical or closely relatedness of the
respective products creates a likelihood of confusion amongst consumers as to the source of the
products bearing the respective marks.

59.     The Circle Logo and the Infringing Logo are confusingly similar to one another.

60.     Both the Circle Logo and the Infringing Logo consist of a circular logo consisting
of two concentric circles creating an outer region and an inner region of the logo.

61.     The proportion of the size of the outer region to the size of the inner region is
identical or nearly identical in both logos.

62.     Both the Circle Logo and Infringing Logo have a shaded outer region and feature
the mark's literal element—BLAZY SUSAN EST. DENVER COLORADO for the Circle Logo
and ROZY MAKE SMOKING BEAUTIFUL for the Infringing Logo in a concave arched
typography.

63.     Both the Circle Logo and the Infringing Logo feature the respective brand at the
top of the outer region in a convex arched typography.

64.     Both the Circle Logo and the Infringing Logo have a center region consisting of a
background that is lighter in color than the outer region and feature a graphical element.

65. As a used in commerce, the Circle Logo and the Infringing Logo use pink as the dominant color.

66. A side-by-side comparison of the two logos as presented in commerce is below:




67. Likewise, the BSL Trade Dress and the Infringing Packing are remarkably similar to one another. Defendants utilized identical packing containers as the BSL Trade Dress including trapezoidal prism shaped boxes and clear acrylic cylindrical containers with black lids.

68. Both the 6 Cone Box Trade Dress and the Defendants' 6 cone box are trapezoidal prisms in shape with the top edge of the box wider than the bottom edge of the box.

69. Both the 6 Cone Box Trade Dress and the Defendants' 6 cone box are primarily pink in color on the top portion of the box with a second contrasting color on the bottom portion of the box.

70. Both the 6 Cone Box Trade Dress and the Defendants' 6 cone box prominently feature the respective logos in the upper portion of the box.

71.    Both the 6 Cone Box Trade Dress and the Defendants' 6 cone box feature the
phrase "6 Cones Per Pack" (BSL) and "6 Count" (Defendants) on the bottom half of the
respective box.

72.    Both the 6 Cone Box Trade Dress and Defendants' 6 cone box feature the phrase
"Pink Cones".

73.    A side-by-side comparison between Plaintiff's 6 Cone Box Trade Dress and
Defendants' infringing 6 cone product packaging as used and advertised in commerce is below:



74.    The striking similarity between BSL's 6 Cone Box Trade Dress and Defendants'
6 cone product packaging creates a likelihood of confusion amongst consumers as to the source
of the two products.

75.    BSL's Canister Trade Dress and Defendants' 50 count product containers are also
remarkably similar to one another.

76.    Both BSL's Canister Trade Dress and Defendants' 50 count product containers
are clear cylindrical acrylic containers with black tops.

21

77.     Both BSL's Canister Trade Dress and Defendants' 50 count product containers have labels that are predominately pink on the upper portion and are black on the lower portion.

78.     Both BSL's Canister Trade Dress and Defendants' 50 count product container labels feature the respective brand name on the top of the label.

79.     Both BSL's Canister Trade Dress and Defendants' 50 count product container labels feature the literal element "PINK CONES" in pink and centered in the black shaded area.

80.     Appearing below the PINK CONES,  both BSL's Canister Trade Dress and Defendants' 50 count product container feature four product attributes separated by dots: SLOW BURING·ULTRA THIN·VEGAN·GMO FREE· for BSL and CONSIOUSLY SOURCED PAPER·ALL NATURAL DYES·ORGANIC WAX SEAL·FUNCTIONING WATERMARK for Defendants.

81.      Both BSL's Canister Trade Dress and Defendants' 50 count product container labels have the similar wording of "PREMIUM SMOKING ACCESSORIES" (BSL) and "FINE EUROPEAN PAPER" (Defendants) under the respective brand name.

82.     A side-by-side comparison of Plaintiff's Canister Trade Dress and Defendants' 50 cone product packaging as used and advertised in commerce is below:

 

83.    The striking similarity between Plaintiff's Canister Trade Dress and Defendants'
50 cone canister product packaging creates a likelihood of confusion amongst consumers as to
the source of the two products.

84.    BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone
product packaging are also remarkably similar to one another.

85.    Both boxes are rectangular prisms and orientated vertically.

86.    Both BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone
product packaging is predominately pink with a black band on the lower portion of the box.

87.    Both BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone
product packaging feature the Susan Logo and the Infringing Logo respectively on the upper
portion of the box.

88.     Both BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone product packaging feature the confusingly similar phrases "Premium -made in France" (BSL) and "Fine EUROPEAN PAPER" (Defendants) in the pink shaded area.

89.     Both BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone product packaging contain indicia in the black band at the bottom of the box.

90.     Both BSL's 1000 count Cone Box Trade Dress and Defendants' 900 count cone product packaging have the literal element "PINK CONES" on the lower portion of the box.

91.      Both boxes list 4 product attributes separated by black dots in the black band appearing on the lower portion of the box. The BSL's 1000 count Cone Box Trade Dress features the literal element SLOW BURING·SUPER THIN·NATURAL DYE·GMO FREE and similarly Defendants' 900 cone product packaging features the literal element CONSCIOUSLY SOURCED PAPER·ALL NATURAL DYES·ORGANIC GUM SEAL·FUNCTIONING WATERMARK.

92.     A side-by-side comparison of Plaintiff's Cone Box Trade Dress and Defendants' 900 cone product packaging as used and advertised in commerce is below:

 

93.     The striking similarity between BSL's Cone Box Trade Dress and Defendants' 1000 cone product packaging creates a likelihood of confusion amongst consumers as to the source of the two products.

94.     BSL's Counter Display Trade Dress and Defendants' countertop display product packaging are also remarkably similar to one another.

95.     Both BSL's Counter Display Trade Dress and Defendants' countertop display product packaging feature a rectangular prism shaped box orientated along its long side.

96.     Both BSL's Counter Display Trade Dress and Defendant's countertop display product packaging feature boxes that are primarily pink with a black band at the bottom.

97.     Both BSL's Counter Display Trade Dress and Defendants' countertop display product packaging feature the respective logos prominently on the inside of the lid so that when the lid is opened to display the box on a counter, the logo is clearly visible by consumers.

98.    Both BSL's Counter Display Trade Dress and Defendants' countertop display product packaging feature the respective brand name on the front of the box in s stylized font.

99.    Both BSL's Counter Display Trade Dress and Defendants' countertop display product packaging feature indicia in the black band located in the lower portion of the box.

100.    A side-by-side comparison of BSL's Counter Display Trade Dress and Defendants' countertop display product packaging as used and advertised in commerce are shown below:

 

101.    Defendants have been engaged in the manufacture, distribution, advertising, promotion, offering for sale, and sale of cigarette rolling papers and pre-rolled cones using the Infringing Mark, Infringing Logo and Infringing Trade Dress in Colorado and throughout the US.

102.    Attached hereto as Exhibit 3 are true and correct screen captures of ASHH's website showing Defendants' use of the Infringing Mark, Infringing Logo and Infringing Trade Dress.

103.    ASHH's website is interactive and allows for the purchase of products bearing the Infringing Mark, Infringing Logo and Infringing Trade Dress in Colorado.

104.    The cigarette rolling papers and pre-rolled cones Defendants have manufactured, distributed, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark, Infringing Logo and Infringing Trade Dress in Colorado and throughout the United States are identical in nature to those sold by BSL.

105.    Defendants have manufactured, distributed, marketed, advertised, promoted, offered for sale, and sold their rolling papers and pre-rolled cones under the Infringing Mark, Infringing Logo and Infringing Trade Dress through the identical trade channels as BSL including brick and mortar stores in Colorado.

106.    Defendant has marketed, advertised, and promoted its rolling papers and pre-rolled cones under the Infringing Mark utilizing the infringing Logo and Trade Dress through the identical marketing, advertising, and promotional channels as BSL including targeted advertising and in person marketing at tradeshows in Colorado.

107.    Upon information and belief, Defendants offer and sell their rolling papers and pre-rolled cones under the Infringing Mark utilizing the Infringing Logo and Infringing Trade Dress to distributors, retail stores and direct to consumers, often times the same distributors and retail stores that carry the BSL Products.

108.    Upon information and belief, the products Defendants offer under the Infringing Mark, Infringing Logo and Infringing Trade Dress are of inferior quality utilizing inferior raw materials due to the significantly lower retail price of Defendants' products.

109.    Due to Defendants' use of inferior materials and Defendants' business practices, Defendant has earned a poor reputation in the industry.

110.    Upon information and belief on one or more occasions after ASHH terminated its distributorship with BSL and launched its ROZY line of products, ASHH sent its own ROZY branded products to customers that had placed an order for BSL Products.

111.    On November 14, 2022 BSL's counsel sent a cease-and-desist letter to ASHH objecting to Defendant's use of the Infringing Mark. Attached hereto as Exhibit 4 is a true and correct copy of BSL's counsel's November 14th cease and desist letter to Defendant.

112.    To date, BSL has no evidence that Defendants have complied with the demands set out in BSL's counsel's cease and desist letter.

113.    Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' rolling papers and pre-rolled cones and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' cigarette rolling papers and pre-rolled cones originate from, are associated or affiliated with, or otherwise authorized by BSL.

114.    Due to Defendants' infringing activities, BSL has had to reduce its wholesale prices by 10%.

115.     Due to ASHH's status as a former BSL distributor, and as evidenced by the almost identical nature of the Infringing Mark, Infringing Logo and Infringing Trade Dress, Defendants' acts are willful with the deliberate intent to trade on the goodwill of the BSL Registered Marks and BSL Trade Dress, cause confusion and deception in the marketplace, and divert potential sales of BSL's Products to the Defendants.

116.     Defendants' acts, including the sale of inferior goods under the Infringing Mark, Infringing Logo and Infringing Trade Dress are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to BSL and to its valuable reputation and goodwill with the consuming public for which BSL has no adequate remedy at law.

## COUNT ONE
## Infringement of Federally Registered Marks
## 15 U.S.C. § 1114(1)

117.     BSL repeats and realleges paragraphs 1 through 116 hereof, as if fully set forth herein.

118.     Defendants' unauthorized use in commerce of the Infringing Mark and Infringing Logo as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by BSL, or that the Defendants are in some way affiliated with or sponsored by BSL. Defendants' conduct therefore constitutes trademark mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

119.    As a former BSL Distributor, Defendants have committed the foregoing acts of infringement with full knowledge of BSL's prior rights in the BSL Registered Marks and with the willful intent to cause confusion and trade on BSL's goodwill.

120.    Defendants' conduct is causing immediate and irreparable harm and injury to BSL, and to its goodwill and reputation, and will continue to both damage BSL and confuse the public unless enjoined by this court. BSL has no adequate remedy at law.

121.    BSL is entitled to, among other relief, injunctive relief and an award of actual damages, disgorgement of Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
### Infringement of Unregistered Trade Dress
### 15 U.S.C. § 1125(a)

122.    BSL repeats and realleges paragraphs 1 through 121 hereof, as if fully set forth herein.

123.    Defendants' unauthorized use in commerce of the Infringing Trade Dress as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by BSL, or that Defendants are in some way affiliated with or sponsored by BSL. Defendants's conduct therefore constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

124.    As a former BSL distributor, Defendants have committed the foregoing acts of
infringement with full knowledge of BSL's prior rights in the BSL Trade Dress and with the
willful intent to cause confusion and trade on BSL's goodwill.

125.    As a former BSL distributor, Defendants conduct as alleged herein is willful and
is intended to and is likely to cause confusion, mistake, or deception as to the affiliation,
connection, or association of Defendants with BSL.

126.    Defendants' conduct as alleged herein is causing immediate and irreparable harm
and injury to BSL, and to its goodwill and reputation, and will continue to both damage BSL and
confuse the public unless enjoined by this court. BSL has no adequate remedy at law.

127.    BSL is entitled to, among other relief, injunctive relief and an award of actual
damages, disgorgement of Defendants' profits, enhanced damages and profits, reasonable
attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§
1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE
### Federal Unfair Competition
### 15 U.S.C. 1125(a)

128.    BSL repeats and realleges paragraphs 1 through 127 hereof, as if fully set forth
herein.

129.    Defendants' unauthorized use in commerce of the Infringing Mark, Infringing
Logo and Infringing Trade Dress as alleged herein is likely to deceive consumers as to the origin,
source, sponsorship, or affiliation of Defendants' goods/services, and is likely to cause
consumers to believe, contrary to fact, that Defendants' goods/services are sold, authorized,

endorsed, or sponsored by BSL, or that Defendants are in some way affiliated with or sponsored
by BSL.

130.    Defendants' unauthorized use in commerce of the Infringing Mark, Infringing
Logo and Infringing Trade Dress as alleged herein constitutes use of a false designation of origin
and misleading description and representation of fact.

131.    As a former BSL Distributor, Defendants' conduct as alleged herein is willful and
is intended to and is likely to cause confusion, mistake, or deception as to the affiliation,
connection, or association of Defendants with Plaintiff.

132.    Defendants' conduct as alleged herein constitutes unfair competition in violation
of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

133.    Defendants' conduct as alleged herein is causing immediate and irreparable harm
and injury to BSL, and to its goodwill and reputation, and will continue to both damage BSL and
confuse the public unless enjoined by this court. BSL has no adequate remedy at law.

134.    BSL is entitled to, among other relief, injunctive relief and an award of actual
damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and
costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117,
together with prejudgment and post-judgment interest.

**COUNT FOUR**

**Federal Copyright Infringement**

**(17 U.S.C. § 501)**

135.     BSL repeats and realleges paragraphs 1 through 134 hereof, as if fully set forth herein.

136.     The Susan Logo is an original work of two-dimensional visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. BSL is the exclusive owner of the rights under the BSL Copyright. BSL owns a valid copyright registration for the BSL Copyright bearing Registration No. VA-2-120-763.

137.     Through Defendants' conduct alleged herein, including Defendants' manufacture, reproduction, distribution, and sale of products bearing the Infringing Logo, which is copied from and substantially similar to the BSL Copyright, without BSL's permission, Defendants have directly infringed BSL's exclusive rights in the BSL Copyright in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

138.     As a former BSL distributor, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of BSL's rights in the BSL Copyright, and has enabled Defendants illegally to obtain profit therefrom.

139.     As a direct and proximate result of Defendants' infringing conduct alleged herein, BSL has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), BSL is also entitled to recovery of Defendants' profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of products bearing the Infringing Logo, and an accounting of and a constructive trust with respect to such profits.

140.     Alternatively, BSL is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendants' infringing conduct for each of BSL's works that Defendant has infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

141.     BSL is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

142.     As a direct and proximate result of Defendants' infringing conduct alleged herein, BSL has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the BSL Copyright. BSL is therefore entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

## COUNT FIVE
### Colorado Unfair Competition and Deceptive Trade Practices

143.     BSL repeats and realleges paragraphs 1 through 142 hereof, as if fully set forth herein.

144.     By the acts set forth above, Defendants are violating Colorado Code §§ 6-1-105(1)(a), (b) and (c).

145.     Defendants, by utilizing the Infringing Mark, Infringing Logo and the Infringing Trade Dress without BSL's authorization have knowingly or recklessly, and in bad faith, passed off its goods as those of BSL's, have knowingly or recklessly, and in bad faith,

made false representations as to the source and sponsorship of their goods as it related to BSL, and have knowingly or recklessly, and in bad faith, made false representations as to the affiliation, connection, or association of their goods and services with BSL.

146.    Defendants' acts constitute unlawful, unfair, and deceptive trade practices and infringement of the BSL Registered Marks and BSL Trade Dress under Colorado law.

147.    Defendants' infringing conduct is deceptive to consumers and have injured BSL's in its business and property in the State of Colorado.

148.    As a result of Defendants' infringing conduct and unlawful acts, BSL has been damaged.

**COUNT SIX**

**Colorado Common Law Unfair Competition**

149.    BSL repeats and realleges paragraphs 1 through 148 hereof, as if fully set forth herein.

150.    Defendants' willful acts of infringement of the BSL Registered Marks and the BSL Trade Dress constitute unfair competition in violation of Colorado common law.

151.    Defendants are willfully using the Infringing Mark, Infringing Logo and Infringing Trade Dress in commerce to offer their goods for sale in the state of Colorado without BSL's authorization.

152.    Defendants' acts have caused or are likely to cause confusion, deception, and mislead consumers as to the source of Defendants' goods.

153.    As a result of Defendants' infringing conduct and unlawful acts, BSL has been damaged.

WHEREFORE, BSL requests judgment against Defendants as follows:

1.    That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

2.    That Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501).

3.    That Defendants have committed unfair competition and engaged in deceptive trade practices under Colorado Rev. Stat. § 6-1-105(a), (b), and (c).

4.    That Defendants have committed common law trademark and trade dress infringement under Colorado common law.

5.    That Defendants be ordered to provide an accounting of Defendants' profits attributable to Defendants' infringing conduct, including Defendants' profits from sales of products bearing the Infringing Mark, Infringing Logo, and Infringing Trade Dress and any products, works, or other materials that include, copy, are derived from, or otherwise embody the BSL Copyrights, BSL Registered Marks or the BSL Trade Dress.

6.    Granting an injunction permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.    manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise, or promote

cigarette rolling papers or pre-rolled cones bearing the Infringing Mark, Infringing Logo, utilizing the Infringing Trade Dress or utilizing any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BSL Registered Marks or BSL Trade Dress;

b.      manufacturing, distributing, marketing, advertising, promoting, displaying, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, or sell products bearing the Infringing Logo and any products, works, or other materials that include, copy, are derived from, or otherwise embody the BSL Copyright;

c.      reproducing or distributing the Susan Logo, creating any derivative works based on the Susan Logo, or engaging in any activity that infringes Plaintiff's rights in the BSL Copyrights;

d.      engaging in any activity that infringes BSL's rights in the BSL Registered Marks, BSL Trade Dress or the BSL Copyright;

e.      engaging in any activity constituting unfair competition with BSL;

f.      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with BSL, or (ii) BSL's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

e.     using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with BSL or tend to do so;

f.     registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the BSL Registered Marks, BSL Trade Dress or any other mark that infringes or is likely to be confused with the BSL Registered Marks, BSL Trade Dress or any goods or services of BSL, or BSL as their source; and

g.     aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

7.     Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with BSL or constitute or are connected with BSL's goods.

8.     Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Infringing Mark, Infringing Logo, or Infringing Trade Dress or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BSL Registered Marks or BSL Trade Dress, and to

direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Infringing Mark, Infringing Logo or Infringing Trade Dress or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BSL Registered Marks or BSL Trade Dress, and to immediately remove them from public access and view.

9.    Directing that Defendants recall and deliver up for destruction all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Infringing Mark,  Infringing Logo, Infringing Trade Dress, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of the BSL Registered Marks, BSL Trade Dress, or BSL Copyrights.

10.    Directing Millitron to formally abandon with prejudice Federal Trademark Application Serial No. 97362328 and any and all other applications to register the Infringing Mark, Infringing Logo, Infringing Trade Dress or any mark consisting of, incorporating, or containing the BSL Registered Marks, BSL Trade Dress or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

11.    Directing Defendants to cancel with prejudice any and all of its registrations for the Infringing Mark, Infringing Logo, Infringing Trade Dress or any mark consisting of, incorporating, or containing the BSL Registered Marks, BSL Trade Dress or any counterfeit,

copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

12.    Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon BSL's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

13.    With respect to its Copyright claim, awarding BSL:

a.    Defendants' profits obtained as a result of Defendants' infringing conduct, including but not limited to all profits from sales and other exploitation of products bearing the Infringing Logo and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Logo or the BSL Copyrights, or in the Court's discretion, such amount as the Court finds to be just and proper;

b.    damages sustained by BSL as a result of Defendants' infringing conduct, in an amount to be proven at trial;

c.    should BSL so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and

d.    BSL's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

14.    Awarding BSL an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

15.     Directing that Defendants account to and pay over to BSL all profits realized by its

wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)),

enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

16.     Awarding BSL punitive and exemplary damages as the court finds appropriate to deter any

future willful infringement.

17.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and

awarding BSL its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

18.     Awarding BSL interest, including prejudgment and post-judgment interest, on the

foregoing sums.

19.     Awarding such other and further relief as the Court deems just and proper.


**JURY DEMAND**

BSL requests a jury trial on all issues presented in this Complaint.

Dated:  February 1, 2024

Respectfully submitted,

/s/Peter C. Lemire

Peter C. Lemire

Leyendecker & Lemire, LLC

*Attorneys for Plaintiff Blazy Susan, LLC*

9350 E. Arapahoe Rd., Suite 300

Greenwood Village, CO 80111

(303) 768-0123

peter@coloradoiplaw.com

**EXHIBIT 1**

**Competitor Composite**

**EXHIBIT 2**

**Registration Certificates for BSL Registered Marks**

**EXHIBIT 3**

**Samples of Defendants' Use of the Infringing Mark**

**EXHIBIT 4**

**Plaintiff's Cease and Desist Letter**